UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X

Tapia, et al.,

                              Plaintiffs,            **DECISION AND ORDER**

              -against-                              18 Civ. 10771 (AEK)

Lira, et al.,

                              Defendants.
---------------------------------------------------------------X

**THE HONORABLE ANDREW E. KRAUSE, U.S.M.J.[1]**

        This action was commenced on November 18, 2018, ECF No. 1, and on July 17, 2020,

Plaintiffs Andrea Tapia, Melvin-Israel Garcia-Perez, Carlos Palacios, Rafael Pitalua, Jose

Rodriguez, and all others similarly situated (collectively "Plaintiffs") filed their First Amended

Complaint, asserting claims against Defendants Fidel Lira a/k/a Jesus Lira, James Lira, Mary E.

Moloney a/k/a Mary Lira, Guadalajara Mexican Restaurant, New Killmallock, Inc., and Axoltl,

Inc. for violations of the Fair Labor Standards Act ("FLSA") and New York Labor Law

("NYLL") based on the failure to pay minimum wages, overtime wages, or spread-of-hours

wages, and the failure to provide wage notices and wage statements.  ECF No. 47.  On May 23,

2021, Plaintiffs informed the Court that they had reached a partial settlement of the case to

resolve their claims as asserted against Defendants Fidel Lira a/k/a Jesus Lira, Mary E. Moloney

a/k/a Mary Lira, and New Killmallock, Inc. (the "Settling Defendants").  ECF No. 88.  The Court

ordered the parties to submit a joint letter motion for judicial approval of their settlement in

accordance with Cheeks v. Freeport Pancake House, Inc., 796 F.3d 199 (2d Cir. 2015), see ECF

---

[1] The parties have consented to the Court's jurisdiction under 28 U.S.C. § 636(c).  ECF
No. 91.

No. 94, and on July 15, 2021, Plaintiffs' counsel, on behalf of all settling parties, filed a letter, as

well as supporting documents, seeking judicial approval of the parties' proposed settlement

agreement, see ECF No. 100 ("Cheeks Application").  For the reasons that follow, the settling

parties' application for approval of the proposed settlement agreement is DENIED WITHOUT

PREJUDICE to their reapplying for approval of a settlement agreement revised in accordance

with this Decision and Order.

## DISCUSSION

In the Second Circuit, "parties cannot privately settle FLSA claims with a stipulated

dismissal with prejudice under Federal Rule of Civil Procedure 41 absent the approval of the

district court or the [United States] Department of Labor."  Fisher v. SD Prot. Inc., 948 F.3d 593,

599 (2d Cir. 2020).  Thus, a district court in this Circuit must review a proposed FLSA

settlement and determine whether it is fair and reasonable.  See, e.g., Cronk v. Hudson Valley

Roofing & Sheetmetal, Inc., No. 20-cv-7131 (KMK), 2021 WL 38264, at *2 (S.D.N.Y. Jan. 5,

2021).  When reviewing a proposed settlement agreement in an FLSA case, district courts

consider the "totality of circumstances," Wolinsky v. Scholastic, Inc., 900 F. Supp. 2d 332, 335

(S.D.N.Y. 2012), to assess whether the agreement is fair and reasonable, including the following

factors:

> (1) the plaintiff's range of possible recovery; (2) the extent to which the
> settlement will enable the parties to avoid anticipated burdens and
> expenses in establishing their respective claims and defenses; (3) the
> seriousness of the litigation risks faced by the parties; (4) whether the
> settlement agreement is the product of arm's-length bargaining between
> experienced counsel; and (5) the possibility of fraud or collusion.

Fisher, 948 F.3d at 600 (quoting Wolinsky, 900 F. Supp. 2d at 335).  In addition, the following

factors "weigh against approving a settlement":

> (1) the presence of other employees situated similarly to the claimant; (2)
> a likelihood that the claimant's circumstance will recur; (3) a history of
> FLSA non-compliance by the same employer or others in the same
> industry or geographic region; and (4) the desirability of a mature record
> and a pointed determination of the governing factual or legal issue to
> further the development of the law either in general or in an industry or in
> a workplace.

Wolinsky, 900 F. Supp. 2d at 336 (quotation marks omitted).  "[T]here is a strong presumption in

favor of finding a settlement fair, as the Court is generally not in as good a position as the parties

to determine the reasonableness of an FLSA settlement."  Xiao v. Grand Sichuan Int'l St. Marks,

Inc., No. 14-cv-9063, No. 15-cv-6361 (RA), 2016 WL 4074444, at *2 (S.D.N.Y. July 29, 2016)

(quotation marks omitted).

Having reviewed the parties' Cheeks Application, the Court finds that there are

deficiencies in the proposed settlement agreement that preclude approval of the settlement at this

time.

First, the proposed settlement agreement provides for a total settlement payment of

$30,000 ("Settlement Amount"), with Plaintiffs' counsel to seek the Court's approval for the

payment of one-third of the Settlement Amount plus costs to Plaintiffs' counsel in accordance

with counsel's contingency retainer agreement.  See ECF No. 100-1 ("Settlement Agreement") ¶

2.2.i.  Thus, as explained in the Cheeks Application, Plaintiffs' counsel proposes to recover

$10,000 in attorneys' fees plus $689.39 in costs[2]—a total of $10,689.39—from the total

Settlement Amount.  Id. at 1-2.  The Cheeks Application also states that the $19,310,61

---

[2] Paragraph 4 of the Cheeks Application states that counsel is only seeking to recover "expenses totaling $400, which is the $400 filing fee to start the Action."  Cheeks Application at 4.  But the more detailed breakdown of the allocation of the Settlement Amount in the Cheeks Application makes clear that counsel is seeking an additional $289.39 in expenses beyond the $400 filing fee.  Id. at 1-2. The costs incurred are also included among the entries listed in Plaintiffs' counsel's billing records.  See ECF No. 100-2.

remaining from the Settlement Amount ($30,000 - $10,689.39 = $19,310.61) would be allocated

to each of the five Plaintiffs[3] in equal amounts of $3,862.12.  Id. at 2.  Yet this proposed

distribution plan is not stated anywhere in the Settlement Agreement itself.  Rather, the

Settlement Agreement states only that the full Settlement Amount is to be paid to Plaintiffs'

counsel, and Plaintiffs' counsel "shall then distribute each Plaintiff's settlement payment from

Plaintiff's [sic] Counsel's trust account."  Settlement Agreement ¶ 2.1.ii.  In order for the

Settlement Agreement to be approved, it must state clearly the exact dollar amount to be paid to

each Plaintiff—this information must be added to the revised version of the Settlement

Agreement.

 Second, in a section of the Cheeks Application entitled "Attorney fees are fair and

reasonable," Plaintiffs' counsel explains that under the Settlement Agreement, he is not receiving

an "award of reasonable attorney fees, but the Plaintiffs directed [sic] payment to counsel

pursuant to his contingency retainer agreement (a third recovery plus reimbursement of costs

after the third apportionment)."  See id. at 3-4; Settlement Agreement ¶¶ 2.1.iv, 2.2.i.[4]  Thus,

---

[3] According to the Cheeks Application, "[t]his settlement is not a class/collective
settlement.  It is limited to the named Plaintiff [sic]."  Id. at 2.  Nevertheless, the Settlement
Agreement contains at least one reference to "opt-ins," see Settlement Agreement ¶ 2.1.iv &
footnote 4, infra, which is confusing in the context of an agreement on behalf of individual
plaintiffs.  This, and any other reference to "opt-ins" in the Settlement Agreement, must be
removed in the revised version.

[4] Paragraph 2.1.iv. of the Settlement Agreement states:

> Payment of the entire Settlement Amount shall fully resolve and satisfy
> any and all amounts to be paid to Plaintiffs (including Opt-Ins) and their
> counsel under this Settlement Agreement.  Plaintiffs expressly waive their
> right to collect attorney fees and shall be responsible for the payment of
> Plaintiffs' Counsel pursuant to their contingency retainer agreement.

Paragraph 2.2.i. of the Settlement Agreement states:

although the Settlement Agreement provides that Plaintiffs' counsel will seek judicial approval

of his fees and costs, id. ¶ 2.2.i, counsel purports to seek such fees and costs pursuant his

contingency retainer agreement, id., and the Settlement Agreement expressly and separately

provides that Plaintiffs "shall be responsible for the payment of Plaintiffs' Counsel pursuant to

their contingency retainer agreement," id. ¶ 2.1.iv.  Taken together, these provisions suggest that

Plaintiffs' counsel will recover the full amount of his fees as set forth in his contingency retainer

agreement regardless of whether the Court approves the fee amount, despite the language in the

Settlement Agreement regarding seeking Court approval.

Plaintiffs' counsel explains in the Cheeks Application that "Plaintiffs are not receiving

any payment of statutory attorney fees under this agreement.  There is a distinction between a

statutory award of attorney fees to a prevailing party and the fees a client owes under a retainer

agreement."  Cheeks Application at 3.  Counsel cites Venegas v. Mitchell, 495 U.S. 82 (1990), to

support his assertion that he is entitled to recover a greater amount of attorneys' fees from

Plaintiffs pursuant to his contingency retainer agreement than might be ordered as a fee award by

the Court pursuant to statute.  Id.  Venegas involved the fee-shifting statute 42 U.S.C. § 1988 and

led the Supreme Court to evaluate "whether § 1988 invalidates contingent-fee contracts that

would require a prevailing civil rights plaintiff to pay his [or her] attorney more than the

statutory award against the defendant."  495 U.S. at 83-84.  The Supreme Court concluded that

---

The Settling Parties agree that Plaintiffs' Counsel will seek approval of,
and Settling Defendants will not oppose, an application to the Court that
one-third of the Settlement Amount in addition to the recoupment of costs
and expenses shall be paid to Plaintiff's counsel as per the Plaintiffs [sic]
contingency retainer agreement arrangement with Plaintiffs' counsel.
There shall be no award of statutory attorney fees or related expenses.
The Settling Parties are individually responsible for their own costs and
payments to their respective counsels for the representation in the
litigation.

"§ 1988 controls what the losing defendant must pay, not what the prevailing plaintiff must pay

his [or her] lawyer." Id. at 90.  In other words, as Plaintiffs' counsel emphasizes here, "[w]hat a

plaintiff may be bound to pay and what an attorney is free to collect under a fee agreement are

not necessarily measured by the reasonable attorney's fee that a defendant must pay pursuant to a

court order." Cheeks Application at 3 (quoting Venegas, 495 U.S. at 90).

Plaintiffs' counsel's reliance on Venegas is misplaced, however, in the context of court

approval of an FLSA settlement.  In Gurung v. White Way Threading LLC, 226 F. Supp. 3d 226

(S.D.N.Y. 2016), the plaintiff's counsel sought attorney's fees amounting to 57 percent of the

settlement fund, and cited Venegas "for the tangential proposition that an attorney's right to fees

derives from his [or her] contract with the client, not from a statute." 226 F. Supp. 3d at 230.  In

denying counsel's fee request, the court noted that "Venegas did not hold that, in a case where a

court has a statutory responsibility to assure that the allocation of settlement proceeds is

reasonable and fair to the plaintiff, the Court must defer to a lawyer's retainer agreement with his

or her client." Id. at 231.  Rather, in a case like this one, "[w]hile counsel's retainer agreement

with the prevailing plaintiff may certainly be considered in assessing the reasonableness of the

allocation of the proposed settlement corpus, in the end, it remains the Court's authority under §

216(b) of the FLSA to determine whether the proposed fee is a 'reasonable attorney's fee.'" Id.

It is especially perplexing that Plaintiff's counsel would seek to include these particular

attorney's fee provisions in the Settlement Agreement since "[c]ourts in this District routinely

award one third of a settlement fund as a reasonable fee in FLSA cases." Santos v. YMY Mgmt.

Corp., No. 20-cv-1992 (JPC), 2021 WL 431451, at *2 (S.D.N.Y. Feb. 8, 2021) (quotation marks

and brackets omitted).  One-third of the $30,000 Settlement Amount is $10,000, which is the

same as the proposed amount of fees here.  The Settlement Agreement fails to take into account

case law in this District that provides that "when awarding fees on a percentage-of-the-fund

basis, the appropriate denominator is the total settlement net of costs," Beckert v. Ronirubinov,

No. 15-cv-1951 (PAE), 2015 WL 8773460, at *3 (S.D.N.Y. Dec. 14, 2015) (citation omitted)

(emphasis in original), but event still, one-third of the total settlement fund net of costs is

$9,770.20 ($30,000 - $689.39 = $29,310.61; $29,310.61 ÷ 3 = $9,770.20).[5]  The difference

between Plaintiffs' counsel's recovery as calculated in accordance with his retainer agreement

and the amount of the fee award as calculated based on the total settlement fund net of costs is

negligible—a difference of just $229.80 ($10,000 - $9,770.20).  Nevertheless, the Court cannot

approve an FLSA settlement that, as written, could allow an attorney to potentially recover a

larger fee than would be deemed reasonable by the Court.  It is not difficult to envision a

scenario in which allowing an attorney to be paid exclusively in accordance with a retainer

agreement, as opposed to what the Court determines to be a reasonable attorney's fee under the

FLSA, could lead to an attorney receiving a grossly disproportionate percentage of the settlement

fund, see Gurung, 226 F. Supp. 3d at 231, and the ambiguous language in the Settlement

Agreement leaves open the possibility that Plaintiffs' payment obligations could exceed that

which is approved by the Court.  The purpose of requiring judicial approval of FLSA settlements

is to protect employees' rights and ensure that they benefit from the settlement of their claims.

See Cheeks, 796 F.3d at 206-07 (noting "the potential for abuse in such settlements," as well as

"the FLSA's primary remedial purpose:  to prevent abuses by unscrupulous employers, and

remedy the disparate bargaining power between employers and employees," and observing that

---

[5] If Plaintiffs' counsel is instead allocated a total of $10,459.59 ($9,770.20 in fees + $689.39 in costs) from the Settlement Amount, then each of the Plaintiffs would recover $3,908.08, assuming the Settlement Amount is distributed equally among the Plaintiffs ($30,000 - $10,459.59 = $19,540.41; $19,540.41 ÷ 5 = $3.908.08).

"the need for such employee protections, even where the employees are represented by counsel, remains"). Accordingly, the Settlement Agreement must be revised to (1) remove any language that may be read to preclude judicial oversight of the amount allocated to attorneys' fees, or that binds Plaintiffs to paying their counsel in accordance with his retainer agreement regardless of any judicial determination with respect to a reasonable fee; and (2) state the allocations of the Settlement Amount as to each of the Plaintiffs and to Plaintiffs' counsel, with the allocations to be recalculated as set forth above.

Third, with respect to Plaintiffs' monetary recovery, an equal dollar amount is allocated to each of the five Plaintiffs, but the damages spreadsheets submitted in support of the Cheeks Application show that the Plaintiffs allegedly suffered varying amounts of damages. See ECF No. 100-3 (damages spreadsheets). It is therefore unclear why each Plaintiff is not being allocated his or her pro rata share of the settlement proceeds. Assuming arguendo that Plaintiffs agreed to this equal allocation of the settlement proceeds, the Plaintiffs would be receiving the following percentages of their unpaid wages (unpaid minimum wages, unpaid overtime wages, and unpaid spread of hours wages without liquidated damages) as part of the proposed settlement, assuming the accuracy of the spreadsheets and based on the original allocation to each Plaintiff of $3,862.12:  12.6% for Tapia, 16.9% for Garcia-Perez, 4.8% for Palacios, 36% for Pitalua, and 1.5% for Rodriguez (spelled Rodri*q*uez in the Settlement Agreement).[6]

---

[6] To be clear, these figures do not represent the percentages of recovery based on total alleged damages, which would include liquidated and statutory damages. Those percentages would be even lower for each Plaintiff. The gross Settlement Amount of $30,000 is 7.3% of the total of all Plaintiffs' unpaid wages (unpaid minimum wages, unpaid overtime wages, and unpaid spread of hours wages without liquidated damages) as set forth in the damages spreadsheets, and the net Settlement Amount of $19,310.61 (based on the original allocation of attorneys' fees and costs) is 4.7% of the total of all Plaintiffs' unpaid wages.

Except in Pitalua's case, these percentages of recovery are far lower than in other cases in this District where courts have approved FLSA settlements. See, e.g., Santos, 2021 WL 431451, at *1 (approving settlement where plaintiff's recovery was "approximately 39% of his total alleged minimum wage and overtime owed," and noting that "[c]ourts in this District routinely award settlement amounts within this range.") (collecting cases). The Cheeks Application acknowledges that the amount of the settlement is "nominal," but attempts to justify this recovery by explaining that this is an "extremely high-risk case for the Plaintiffs," specifically because "the main culpable defendants [the Settling Defendants] are judgment proof and . . . the Plaintiffs must prove successor liability." See id. at 2. But the Cheeks Application does not do enough to explain the basis for the assertion that the Settling Defendants are "judgment proof." For example, the parties state that Mary Moloney "lives in England, and has no assets in the United States," but do not provide any support for the statement that she has no assets in the United States. Id. Moreover, the Cheeks Application maintains that Fidel Lira is judgment proof, but it provides no explanation for how the parties came to this understanding. Id. There is no statement whatsoever about whether another of the Settling Defendants—New Killmallock, Inc.—has any assets or is judgment proof. Given the very small amounts to be recovered by Plaintiffs under the terms of the proposed settlement, the Court needs more information from the parties regarding Plaintiffs' risk of being unable to collect on any judgment against the Settling Defendants, or any other litigation risks that Plaintiffs face if they do not proceed with settlement, in order to be able to assess the fairness and reasonableness of the settlement.[7] See

---

[7] Although Plaintiffs note that the restaurant has "transferred ownership two times during the statutory period" and contend that "the transfer of ownership was really just a method to evade liabilities," Cheeks Application at 2, this still does not adequately explain the basis for their assertion that the Settling Defendants are judgment proof.

Villanueva v. 179 Third Avenue Rest. Inc., No. 16-cv-8782 (AJN), 2018 WL 3392870, at * 2

(S.D.N.Y. July 12, 2018) ("Obstacles to collection may justify a reasonable settlement for an

amount less than the maximum amount Plaintiffs might have recovered otherwise.  However, the

proposed settlement amount here is a mere 5.32 percent of the estimated maximum recovery.

Given the paucity of information in Plaintiffs' letter, the Court is unable to determine whether it

is reasonable under the circumstances for Plaintiffs to accept such a small portion of what they

allege they are owed.  The parties are ordered to submit a more detailed discussion of the

considerations described in Wolinsky . . . .") (internal citations and parenthetical explanations

omitted), subsequent determination, 2018 WL 4100479 (S.D.N.Y. Aug. 28, 2018); see also

Aguilar v. N & A Prods. Inc., No. 19-cv-1703 (RA), 2019 WL 5449061, at *1-2 (S.D.N.Y. Oct.

24, 2019) (noting that "the range of possible recovery is only one factor relevant to settlement

approval," finding that the other Wolinsky factors "weigh[ed] in favor of finding the settlement

amount fair and reasonable," and approving a settlement constituting only a 7 percent recovery if

calculated based on the gross settlement amount, prior to the deduction of attorneys' fees)

(quotation marks omitted).

Fourth, the release from Plaintiffs also suffers from a deficiency.  It states that Plaintiffs

release the "Defendant Releasees," which are defined to include "Maya Riviera, Inc.,

Barkingside Ltd, Rancho Grande ____."  Settlement Agreement ¶ 1.12 (blank space in the

original).  The Cheeks Application nowhere explains, however, who or what these entities are or

how they are related to the Settling Defendants—none are currently named as Defendants in this

lawsuit.  The Court therefore cannot assess whether it is appropriate for these entities to be

included in the release.

10

One clause of the release provision could, at first glance, be read as an overbroad release, inasmuch as it states that Plaintiffs' release "includes, <u>but is not limited to</u> federal and state wage claims alleged in the Amended Complaint including overtime pay under the FLSA and New York State Labor Law and retaliation claims."  Settlement Agreement ¶ 3.1 (emphasis added). But this language must be understood in the limited context of the remainder of the release, which states that the release encompasses "any and all claims, demands, and causes of action <u>for all matters that arise from or are related to the claims and defenses alleged in the Amended Complaint or in the Litigation</u>."  <u>Id.</u> (emphasis added).  It is therefore sufficiently clear that the broad language "includes, but is not limited to federal and state wage claims alleged in the Amended Complaint . . ." only releases claims for alleged violation of any laws pertaining to wage claims and rights, because these are the only types of claims alleged in the Amended Complaint.

<u>Fifth</u>, the non-disparagement provision of the proposed settlement agreement states that "Plaintiffs agree not to make any statement that would disparage the Settling Defendants, except that the Plaintiffs may testify truthfully in any legal proceeding where their testimony is compelled by subpoena under oath, or in any investigation conducted by any government agency."  Settlement Agreement ¶ 5.1.a.  In accordance with case law in this District, this provision must be revised to state that Plaintiffs also may speak truthfully about their experience litigating this case.  <u>See, e.g.</u>, <u>Del Aguila v. Newmark Solutions Corp.</u>, No. 19-cv-7372 (RA), 2020 WL 6273976, at *2-3 (S.D.N.Y. Oct. 26, 2020) (rejecting non-disparagement clause that had carve-out only for "truthful statements that are required by applicable law, regulation, or legal process").

11

**CONCLUSION**

For the reasons set forth above, the parties' <u>Cheeks</u> Application (ECF No. 100) is

DENIED WITHOUT PREJUDICE to the parties reapplying for approval of a settlement

agreement that is revised in accordance with this Decision and Order.  The parties are hereby

directed to submit a revised <u>Cheeks</u> application and a proposed revised settlement agreement on

or before December 3, 2021.

Dated:  November 2, 2021
       White Plains, New York

                                             **SO ORDERED.**

                                            _____

                                            ANDREW E. KRAUSE
                                            United States Magistrate Judge